**In re POLYSAT, INC., Debtor.**

**POLYSAT, INC., Plaintiff,**

v.

**UNION TANK CAR COMPANY, Defendant.**

**Bankruptcy No. 89–12256F.
Adv. No. 92–1094.**

United States Bankruptcy Court,
E.D. Pennsylvania.

April 15, 1993.

Edmond M. George, Joel R. Spivack, Obermayer, Rebmann, Maxwell & Hippel, Philadelphia, PA, for debtor, Polysat, Inc.

Lee Applebaum, Fineman & Bach, Philadelphia, PA, Richard H. Chapman, Michael J. Keaton, Fagel & Haber, Chicago, IL, for defendant, Union Tank Car Co.

## MEMORANDUM OPINION

BRUCE I. FOX, Bankruptcy Judge:

The chapter 11 debtor, Polysat, Inc., has filed an adversary proceeding seeking injunctive relief against the defendant, Union Tank Car Company (hereinafter "UTCC"). The debtor contends that the discharge injunction found in 11 U.S.C. § 524, which arose by confirmation of the debtor's plan under section 1141(d), bars UTCC from proceeding with litigation it commenced against the debtor in the Pennsylvania Court of Common Pleas. UTCC opposes the relief sought and argues that its claim against the debtor was not discharged.

The debtor initially sought preliminary injunctive relief. At a conference, both parties acknowledged that the relevant facts were not in dispute, and that the legal issue concerning the scope of the debtor's bankruptcy discharge required an analysis of the Bankruptcy Code provisions found in sections 365 and 1141. Further, they agreed that this court (rather than the state court) should interpret these statutory provisions.

Accordingly, and with the agreement of both parties, I entered an order enjoining the defendant from prosecuting its state court litigation against the debtor, pending further order of this court. The parties also agreed that, in lieu of requiring the defendant to file an answer to the debtor's complaint, cross-motions for summary judgment under Fed.R.Bankr.P. 7056 would instead be filed. Those two summary judgment motions are presently before me.

■ As just noted, both parties concur that there are no material facts in dispute. They differ, however, on the scope of this court's jurisdiction. While defendant UTCC suggests that this proceeding is non-core (UTCC Memorandum at 1–2), I agree with the debtor's jurisdictional assertion. As the instant proceeding concerns the scope of the discharge injunction arising from sections 524 and 1141 of the Code, it is a core proceeding under 28 U.S.C. §§ 157(b)(2)(A), (I) or (O). *Accord, e.g., In re Jacobs,* 149 B.R. 983, 989 (Bankr. N.D.Okla.1993); *see Beard v. Braunstein,* 914 F.2d 434, 444 (3d Cir.1990) (a core proceeding "invokes a substantive right provided by title 11 or ... is a proceeding that, by its nature, could arise only in the context of a bankruptcy case") (quoting *Matter of Wood,* 825 F.2d 90, 97 (5th Cir. 1987)); *In re Mankin,* 823 F.2d 1296, 1308 (9th Cir.1987), *cert. denied,* 485 U.S. 1006, 108 S.Ct. 1468, 99 L.Ed.2d 698 (1988) (core proceeding is based on a right derived from the federal bankruptcy law). Accordingly, I shall enter a final judgment in this proceeding.

### I.

On April 25, 1986, the debtor's predecessor—Saturn Chemical, Inc.—entered into a lease agreement with UTCC for the rental of various railroad tank cars which were to be used to transport raw material or finished goods. Under the terms of that agreement, the lessee could obtain the use of specific tank cars from UTCC by entering into riders to the lease: one rider per tank car. The parties ultimately entered into three such riders: two by Saturn Chemical, Inc. and one by Polysat, Inc.

(Ex. G, UTCC Cross–Motion for Summary Judgment.)

On June 20, 1989, the debtor filed a voluntary petition in bankruptcy under chapter 11. Among the claims listed on the debtor's schedules was a prepetition lease claim of UTCC, which was not disclosed as disputed, unliquidated or contingent.[1] The debtor did not assume or reject the lease agreement at any time during its chapter 11 case. *See generally* 11 U.S.C. § 365. Nor did UTCC seek a court order compelling the debtor to assume or reject the lease agreement. *See generally* 11 U.S.C 365(d)(2). Furthermore, it is agreed that the debtor tendered no payments to UTCC after the bankruptcy filing in connection with its use or possession of the three tank cars.

There is no question that UTCC knew of the debtor's bankruptcy filing prior to confirmation. Not only did it receive such notice along with other creditors, but it was a defendant in a preconfirmation adversary proceeding, Adv. No. 89–0976F, brought in this court by the debtor, concerning a chemical spill from one of the leased tank cars.

On July 26, 1991, an order was entered confirming the debtor's chapter 11 plan of reorganization. The debtor's plan did not provide for the assumption or rejection of the lease. *See generally* 11 U.S.C. § 1123(b)(2). By virtue of the debtor's disclosure of UTCC's uncontroverted prepetition claim in its bankruptcy schedules, UTCC holds an allowed unsecured claim. 11 U.S.C. § 1111(a). Pursuant to the debtor's confirmed plan, UTCC has already received (or will receive) a distribution of

---

1. In this proceeding, as well as in the state court litigation, the debtor contends that Saturn Chemical only, its predecessor corporation, was a party to the underlying lease agreement thus freeing Polysat from any liability to UTCC. While the liability of Polysat is not presently before me, the debtor's position is highly problematic.

First, if Polysat did not become a party to the underlying lease agreement, how did it enter into a rider agreement with UTCC in March 1989? Second, as UTCC argues, Polysat brought suit in the bankruptcy court against UTCC for a chemical spill from a tank car leased to Saturn

Chemical. In that litigation, Polysat testified that it was party to a lease agreement with UTCC for that particular tank car. And based upon that testimony, a finding was made to that effect. Third, if the debtor had no liability to UTCC, why did it schedule UTCC as an undisputed prepetition creditor when it filed its bankruptcy petition?

Therefore, it seems likely that Polysat would be found as the personal property lessee of UTCC (as debtor's counsel conceded at oral argument). Accordingly, I have assumed this finding for purposes of resolving the instant proceeding.

fifteen percent on its unsecured claim of $3,974.95, as reported in the debtor's schedules.

Although UTCC had actual notice of, and received all formal notices mailed in, the debtor's bankruptcy case, UTCC has never filed a request for payment of an administrative expense claim in the debtor's bankruptcy case. *See generally* 11 U.S.C. § 503(a). Rather, UTCC made several postconfirmation demands of the debtor for the return of the three tank cars.

On February 4, 1992, after the debtor failed to return the cars, UTCC filed, in Philadelphia Common Pleas Court, an action in replevin and breach of contract against the debtor seeking damages and the return of the tank cars. Court of Common Pleas, Philadelphia County, February Term 1992, No. 0343. On or about June 12, 1992, UTCC filed a motion for a writ of seizure. On June 19, 1992, the state court entered a consent order for the issuance of a writ of seizure pursuant to Pa.R.Civ.P. 1075.1. Thereafter, the debtor returned the tank cars.

On August 4, 1992, UTCC filed in state court an amended complaint seeking monetary damages (and fees and costs) from the debtor in excess of $30,000.00 for nonpayment of the three tank car leases, based upon theories of contract, conversion, quasi-contract and quantum meruit. UTCC asserted that damages began to accrue as of July 1989. The debtor responded in state court with counterclaims, seeking damages for storing the tank cars and as a result of a chemical spill from one of the cars.

On November 3, 1992, the debtor filed the instant adversary proceeding, *see generally* Fed.R.Bankr.P. 7001, seeking an order under 11 U.S.C. § 105(a) enjoining UTCC from proceeding for damages against the debtor in the state court. The debtor asserts that confirmation of its plan resulted in a rejection (within the meaning of section 365(a)) of any lease agreements with UTCC; moreover, it contends that confirmation resulted in a discharge of its obligations to UTCC by virtue of sections 365(g)(1) and 1141(d). Finally, it asserts that this discharge serves to enjoin the state court damage litigation pursuant to section 524, which is enforceable by section 105(a). *See generally Matter of Rosteck,* 899 F.2d 694 (7th Cir.1990); *Matter of Askew,* 61 B.R. 87 (Bankr.S.D.Ohio 1986).

At the hearing held on the summary judgment motions, the debtor modified its position. It conceded that 11 U.S.C. § 1141(d) could not discharge UTCC's claim arising from the debtor's postconfirmation use or possession of the tank cars. UTCC, in turn, acknowledged that section 1141(d) discharged its claim arising from the debtor's prepetition use or possession of the tank cars. Indeed, it was receiving a distribution under the plan for that prepetition claim. Thus, the heart of the present dispute is whether the debtor's liability (if any exists under nonbankruptcy law) arising from its postpetition/preconfirmation use or possession of the tank cars was discharged by confirmation.

## II.

At the outset, it is important to note that the only issue before me is whether the damage claims asserted by UTCC in the state court civil action have been discharged and thus enjoined by the effect of the order of confirmation. As no party has sought to remove that state court civil action to this court, whether UTCC has any valid claims and, if so, the amount of such claims is irrelevant to the issue posed in the instant proceeding. *See, e.g., In re McLaren,* 983 F.2d 56, 59 (6th Cir.1993) (emphasizing the distinction between the dischargeability of a debt and the validity of the debt). Similarly, the validity of the debtor's two counterclaims are outside the scope of this proceeding. Therefore, unless I conclude that all liability the debtor may have to UTCC was discharged, UTCC will be free to resume at least part of the state court litigation, and the debtor will be free to raise all state law defenses to which it is entitled.

## A.

A debtor may, subject to court approval, assume or reject a prepetition lease agreement pursuant to § 365(a) of the Bankrupt-

cy Code. 11 U.S.C. § 365(a). *See, e.g., In re University Medical Center*, 973 F.2d 1065, 1075 (3d Cir.1992); *In re Marple Pub. Co.*, 20 B.R. 933, 935 (Bankr.E.D.Pa. 1982) ("[c]ounsel ... overlooks the mandatory provision of § 365(a) that any assumption or rejection of an unexpired lease is devoid of validity without the court's approval"). A debtor may even provide for the assumption or rejection of a lease or an executory contract in its plan of reorganization. 11 U.S.C. § 1123(b)(2). (Indeed, debtors commonly provide in their plans for the rejection of all leases and executory contracts that were not previously assumed.)

■ In a chapter 11 case, where a debtor has failed to expressly assume or reject a prepetition lease agreement or executory contract, that lease or contract will be unaffected by the bankruptcy filing. *In re BSL Operating Corp.*, 57 B.R. 945, 951 (Bankr.S.D.N.Y.1986); *In re Shoppers Paradise, Inc.*, 8 B.R. 271, 278 (Bankr. S.D.N.Y.1980); *accord, e.g., Matter of Greystone III Joint Venture*, 948 F.2d 134, 141 (5th Cir.1991), *cert. denied*, — U.S. —, 113 S.Ct. 72, 121 L.Ed.2d 37 (1992); *In re Continental Country Club, Inc.*, 114 B.R. 763, 767 (Bankr.M.D.Fla.1990); *Matter of Central Watch, Inc.*, 22 B.R. 561, 565 (Bankr.E.D.Wis.1982); *see* L. King, 5 *Collier on Bankruptcy*, ¶ 1123.02[2][b] (15th ed. 1993).[2]

■ This result is consistent with decisions under the former Bankruptcy Act. A lease or executory contract that is neither rejected nor assumed passes through the bankruptcy to the reorganized debtor. *See Smith v. Hill*, 317 F.2d 539, 542 n. 6 (9th Cir.1963) ("'failure to assume affirmatively an executory contract does not result at any time in rejection of the contract.... [T]he contract can be rejected only by affirmative action.... Unless so rejected, the contract continues in effect'") (quoting 8 *Collier on Bankruptcy*, at 162 (14th ed.)). *See also Consolidated Gas Elec. L. & P. Co. v. United Rys. & Elec. Co.*, 85 F.2d 799, 805 (4th Cir.1936), *cert. denied*, 300 U.S. 663, 57 S.Ct. 493, 81 L.Ed. 871 (1937); *Federal's, Inc. v. Edmonton Investment Company*, 404 F.Supp. 68, 71 (E.D.Mich. 1975), *aff'd*, 555 F.2d 577 (6th Cir.1977). Where Congress has not evidenced an intent to change established pre-Code law, courts should interpret the Code as continuing that legal principle; *see generally Dewsnup v. Timm*, — U.S. —, —, 112 S.Ct. 773, 779, 116 L.Ed.2d 903 (1992) ("Congress must have enacted the Code with a full understanding of this practice" under the Act); *In re Erin Food Services, Inc.*, 980 F.2d 792, 800 (1st Cir.1992) ("When confronted with an alleged ambiguity in the Bankruptcy Code, courts may consult pre-Code law for appropriate guidance, based on the presumption that Congress did not intend to effect substantive changes in prior bankruptcy law unless its intent is clearly expressed in the Code").

■ Accordingly, the instant debtor's first contention is incorrect. The debtor never sought or obtained court approval to reject this lease as required by section 365 and Fed.R.Bankr.P. 6006. Had there been such a rejection, then by virtue of section 365(g)(1), the breach of the lease would have resulted in a prepetition claim, and that claim would have been discharged upon confirmation. But confirmation of the debtor's plan by itself does not result in the rejection of all unassumed leases unless the plan so provides. Here, the debt-

---

2. Nonresidential real property leases are an exception. Absent a debtor's motion to assume such leases within 60 days following the order for relief, or a debtor's motion to extend the time to assume or to reject such leases within that 60–day period, nonresidential real property leases are "deemed rejected." *See* 11 U.S.C. § 365(d)(4). *See also* 11 U.S.C. § 365(d)(5) (providing for automatic rejection of nonresidential real property leases of aircraft terminals or aircraft gates upon the "occurrence of a termination event ... (unless the court orders the trustee to assume such unexpired leases within 5 days after the termination event)", at the airport operator's option, but only if the airport operator waives the right to damages flowing from the rejection). In a chapter 7 case, any "executory contract or unexpired lease of residential real property or of personal property of the debtor" that is not assumed "within 60 days after the order for relief, or within such additional time as the court, for cause, within such 60–day period, fixes, ... is deemed rejected." 11 U.S.C. § 365(d)(1).

or's plan did not. Therefore, the UTCC lease, having been neither assumed nor rejected, passed through the chapter 11 case unaffected by bankruptcy. It remained valid postconfirmation, and postconfirmation breaches under relevant nonbankruptcy law may be asserted in a court of competent jurisdiction.

### B.

Having determined that the UTCC lease survived the debtor's bankruptcy, I must next consider whether § 1141(d) discharges any claims UTCC may have arising from the debtor's use or possession of the tank cars.

Section 1141(d)(1)(A) provides, in relevant part, that

[e]xcept as otherwise provided in this subsection, in the plan, or in the order confirming the plan, the confirmation of a plan—

(A) *discharges the debtor from any debt that arose before the date of such confirmation,* and any debt of a kind specified in section 502(g), 502(h), or 502(i) of this title, whether or not—

(i) a proof of the claim based on such debt is filed or deemed filed under section 501 of this title;

(ii) such claim is allowed under section 502 of this title; or

(iii) the holder of such claim has accepted the plan[.]

11 U.S.C. § 1141(d)(1)(A)(i)–(iii) (emphasis added).

■ UTCC has recognized that § 1141(d)(1)(A) "discharged" its general unsecured claim arising from the debtor's prepetition use or possession of the three tank cars. By virtue of the debtor's confirmed plan, the debtor's liability for any prebankruptcy breach of the lease will be repaid in a manner identical to other unsecured claims. As UTCC never objected to the terms of this plan (and as the revocation period established by 11 U.S.C. § 1144 has expired), it is bound by those terms, 11

U.S.C. § 1141(a), and cannot bring a postconfirmation state court action to recover prepetition damages.[3]

■ Conversely, as now accepted by the debtor, section 1141(d)(1)(A) did not discharge any claim UTCC may have which arises from the debtor's use or possession of the tank cars postconfirmation. *Holywell Corp. v. Smith,* — U.S. —, —, 112 S.Ct. 1021, 1028, 117 L.Ed.2d 196 (1992) ("Even if § 1141(a) binds creditors of ... debtors with respect to claims that arose before confirmation, we do not see how it can bind the United States or any other creditor with respect to postconfirmation claims"). *Accord, e.g., In re Sure–Snap Corp.,* 983 F.2d 1015, 1019 (11th Cir.1993); *In re Dahlgren Intern., Inc.,* 147 B.R. 393, 403–05 (N.D.Tex.1992). As to postconfirmation liability, the debtor is not entitled to an injunction against the defendant. (Whether the debtor in fact has any such liability will be determined in this instance by state court.)

### III.

■ The only remaining issue is whether any liability which the debtor may have arising from its use or possession of the three tank cars after its bankruptcy filing, but prior to confirmation, is also discharged. As mentioned earlier, the debtor made no postpetition lease payments to UTCC.

Since section 1141(d)(1)(A) defines the scope of the chapter 11 debtor's discharge to include "any debt that arose before the date of such confirmation," courts have concluded that this statutory provision should be interpreted as written. *See generally Taylor v. Freeland & Kronz,* — U.S. —, 112 S.Ct. 1644, 118 L.Ed.2d 280 (1992); *United States v. Ron Pair Enterprises, Inc.,* 489 U.S. 235, 109 S.Ct. 1026, 103 L.Ed.2d 290 (1989). Recently, the Eleventh Circuit Court of Appeals considered whether confirmation of a debtor's chapter

---

**3.** UTCC may seek, though, to enforce the terms of the plan should the debtor fail to comply. *See In re Benjamin Coal Co.,* 978 F.2d 823, 827 (3d Cir.1992) ("claimant's remedies for any future nonpayment of claims acknowledged in the plan are limited to the usual remedies for the type of claim granted by the plan's provisions").

11 plan discharged the debtor from postpetition, preconfirmation debts pursuant to an executory contract that was neither assumed nor rejected by the debtor prior to or as part of its plan of reorganization. The Court of Appeals concluded that confirmation of the plan discharged the debtor from those postpetition, preconfirmation debts. *In re Sure–Snap Corp.*, 983 F.2d at 1018–19. Even though confirmation did not terminate the agreement, the court held that "confirmation of [the debtor's] Chapter 11 plan *discharged* its *pre-confirmation* liabilities *under the Agreement.*" *In re Sure–Snap Corp.*, 983 F.2d at 1018 (emphasis in original).

Similarly, in *In re Benjamin Coal Co.*, 978 F.2d 823, 826 (3d Cir.1992), the Third Circuit recently instructed that "the confirmation of the Chapter 11 plan discharged the administrative claim previously granted to" the creditor. The Court of Appeals explained that "the discharge of all existing claims, including administrative claims, upon confirmation of a Chapter 11 plan is unambiguous ... in the Bankruptcy Code". *Id.* at 827. *Accord In re Dahlgren Intern., Inc.*, 147 B.R. at 403 and n. 14; *In re Christopher*, 148 B.R. 832 (Bankr.N.D.Tex. 1992).[4]

Obviously, the holding of the Third Circuit is binding upon me. Nonetheless, UTCC challenges this result by reliance upon pre-Code case law, *e.g.*, *Federal's, Inc. v. Edmonton Investment Company*, 404 F.Supp. at 72–73 (holding that a claimant has no dischargeable debt where the lease was neither assumed nor rejected) as support for the proposition that its postpe-

tition, preconfirmation lease claim is not discharged. Even if I were free to agree with UTCC, its argument fails to appreciate an important change made by the Bankruptcy Code.

The former Bankruptcy Act (section 17a, 11 U.S.C. § 35a (repealed 1978)) discharged a debtor only from "provable" debts. *See generally* 11 U.S.C. § 1(15) (repealed 1978) (providing, in relevant part, that " '[d]ischarge' shall mean the release of a bankrupt from all of his debts which are *provable* in bankruptcy") (emphasis added). "Obligations incurred by the bankrupt after the filing of the petition [were] generally not provable and therefore not debts for the purposes of pending bankruptcy proceedings" pursuant to the Act. J. Moore, 1 *Collier on Bankruptcy*, ¶ 1.14, at 91 (14th ed. 1987). "[T]he Act was clear that the date of bankruptcy was the point of cleavage" when determining provable debts. *Matter of Elmer's Auto Parts*, 34 B.R. 63, 64 (Bankr.N.D.Ala.1983); *see generally In re Townsend*, 10 F.2d 790, 791 (3d Cir.1926) ("[a]s this part of the claim was not a debt at the time of the filing of the petition in bankruptcy, it is, of course, not provable").

Thus, under the former Act, postpetition debts in general were not dischargeable. But the Code discards the notion of provable debts, *see, e.g.*, *In re Ozark Restaurant Equipment Co., Inc.*, 816 F.2d 1222, 1229 n. 11 (8th Cir.1987) ("[t]he requirement that the actual creditor have a provable claim has been deleted with the deletion of the whole concept of provability found in ... the Act from the Code"), *cert. denied sub nom. Jacoway v. Anderson*, 484 U.S.

---

**4.** UTCC had actual knowledge of the debtor's bankruptcy filing and also received all notices mailed in that case. Accordingly, no due process issues arise concerning the discharge of UTCC's preconfirmation claims. *Compare Matter of Phoenix Steel Corp.*, 105 B.R. 250, 253 (Bankr.D.Del.1989) (in the context of a corporate bankruptcy, formal notice of a debtor's bankruptcy case was not required, but rather actual notice of the debtor's bankruptcy case on the part of an administrative claimant was sufficient to discharge that entity's administrative claim) *with In re Christopher*, 148 B.R. at 835–36, 836 n. 9 (due process requires only actual notice on the part of such claimants in the context of an individual bankruptcy before dis-

charging administrative claims, but stating that a corporate debtor may need to provide formal notice to administrative claimants); *and In re Dahlgren Intern., Inc.*, 147 B.R. at 403 n. 14 ("confirmation of a plan of reorganization precludes all unaddressed preconfirmation claims of those with notice of the plan and the proceedings related thereto"); *In re Slaw Const. Corp.*, 17 B.R. 744, 746–47 (Bankr.E.D.Pa.1982) (a debtor's failure to provide a claimant with notice of a deadline by which administrative claimants were required to request allowance of their claims may enable such claimant to file a late request for allowance of its administrative claim, but not discussing any actual knowledge on the part of the claimant).

848, 108 S.Ct. 147, 98 L.Ed.2d 102 (1987). Accordingly, section 1141(d)(1) provides for the discharge of all postpetition, preconfirmation claims. *In re Benjamin Coal Co.*, 978 F.2d at 827.[5]

Although such postpetition claims may be discharged, the Code makes provision for their payment. Postpetition lease obligations of the debtor represent an administrative expense by virtue of section 503(b)(1)(A), *accord, e.g.,* L. King, 3 *Collier on Bankruptcy*, ¶ 503.04[1][a][ii] (15th ed. 1993), which is entitled to a first priority payment under section 507(a)(1). *See, e.g., Zagata Fabricators v. Superior Air Products*, 893 F.2d 624, 627 (3d Cir.1990) (landlord is entitled to administrative expense claim for postpetition use and occupancy of leasehold premises); *In re F.A. Potts & Co., Inc.*, 137 B.R. 13, 16 (E.D.Pa.1992) ("a debtor's rental payments to its landlord are allowable as an administrative expense"); *In re Lease-A-Fleet, Inc.*, 140 B.R. 840, 845, 846 (Bankr.E.D.Pa.1992) ("right to payment for post-petition vehicle rentals arose post-petition" and "the expense of leasing ... vehicles should generally be classified as ... an administrative claim"). Furthermore, by virtue of section 1129(a)(9)(A), a chapter 11 plan may only be confirmed if it provides for payment of administrative claims by the effective date of the plan (unless the claimant agrees to less favorable treatment). *Accord, e.g., In re Valley Park Group, Inc.*, 96 B.R. 16 (Bankr.N.D.N.Y.1989); *In re Keaton*, 88 B.R. 154 (Bankr.S.D.Ohio 1988).

Therefore, and consistent with the holding of *In re Benjamin Coal Co.*, 978 F.2d at 827, UTCC's administrative expense claim arising from the debtor's postpetition, preconfirmation use or possession of the tank cars was discharged pursuant to section 1141(d) of the Code upon confirmation of the debtor's plan. *Accord In re Sure–Snap Corp.*, 983 F.2d at 1018–19.[6]

### IV.

#### A.

■ Having determined that UTCC's postpetition, preconfirmation claim is "discharged," I must next consider the effect of that discharge upon such claim. The parties here disagree upon this point and raise a number of contentions, only some of which need now be considered.

Section 524 of Title 11 describes the effect of "[a] discharge in a case under this title," including a discharge "under section

---

5. UTCC also raises a number of other contentions to support its position that a postpetition, preconfirmation claim is not discharged upon confirmation of a chapter 11 plan. These arguments are unpersuasive.

First, UTCC maintains that "the debtor was incapable of an 'actionable breach' prior to rejection of the Lease" because UTCC "was precluded from enforcing any term of the Lease against Polysat during the pendency of the case." UTCC Supplemental Memorandum at 5. However, when a debtor in chapter 11 fails to tender postpetition rent payments a lessor is entitled to seek both relief from the stay, pursuant to 11 U.S.C. § 362(d), and adequate protection, pursuant to 11 U.S.C. § 363(e). *See Zagata Fabricators v. Superior Air Products*, 893 F.2d 624, 627–28 (3d Cir.1990).

Similarly, UTCC erroneously contends that the debtor possessed the "exclusive power to reject the Lease" and by its failure to do so "PolySat did not allow these claims to 'arise.'" UTCC Supplemental Memorandum at 6. But this position overlooks UTCC's ability to shorten the time period within which the debtor may assume or reject the lease. See 11 U.S.C. § 365(d)(2). In addition, notwithstanding the debtor's failure to assume or reject the UTCC lease, section 503(a)(1) would permit UTCC to seek an administrative expense claim for the debtor's use and possession of the tank cars. *See Zagata Fabricators*, 893 F.2d at 627; *see also In re Art Shirt Ltd., Inc.*, 93 B.R. 333, 338–39 (E.D.Pa.1988) (citing with approval *In re Pulaski Highway Exp., Inc.*, 57 B.R. 502, 509–10 (Bankr. M.D.Tenn.1986) ("[t]he doctrine of 'administrative rent' applies ... to benefits received under an executory contract prior to its assumption or rejection").

Finally, UTCC's assertion that its postpetition claim is not discharged is inconsistent with its recognition at oral argument that its prepetition claim was discharged pursuant to § 1141(d). Just as that prepetition claim arose independently from the debtor's failure to assume or reject the lease, so did UTCC's postpetition, preconfirmation claim.

6. To the extent *In re Slaw Const. Corp.*, 17 B.R. at 747, may hold that postpetition, preconfirmation administrative claims pursuant to an executory contract that passes through a debtor's bankruptcy case are not discharged pursuant to § 1141(d), *In re Benjamin Coal Co.* would overrule that conclusion.

... 1141". Specifically, § 524(a) provides, in relevant part, that a discharge

> (1) voids any judgment at any time obtained, to the extent that such judgment is a determination of the personal liability of the debtor with respect to any debt discharged under section 727, 944, 1141, 1228, or 1328 of this title ...;
>
> (2) *operates as an injunction against the commencement or continuation of an action,* the employment of process, or an act, to collect, recover or offset any such debt as a personal liability of the debtor ...; and
>
> (3) operates as an injunction against the commencement or continuation of an action, the employment of process, or an act, to collect or recover from, or offset against, property of the debtor of the kind specified in section 541(a)(2) of this title that is acquired after the commencement of the case....

11 U.S.C. § 524(a)(1)–(3) (emphasis added).

Thus, UTCC is enjoined from asserting in state court any claim against the debtor for damages arising from the debtor's possession or use of UTCC's three tank cars prior to the date of confirmation of the debtor's chapter 11 plan. *See, e.g., In re Braun,* 141 B.R. 133, 139, *reconsideration denied,* 141 B.R. 144 (Bankr.N.D.Ohio 1992) ("section 524(a) declares that any judgment rendered on a discharged debt in *any forum other than the bankruptcy court* is null and void as it affects the personal liability of the debtor") (citing L. King, 3 *Collier on Bankruptcy* ¶ 524.01, at 524–8 to 524–9 (15th ed. 1992)) (emphasis added); *In re Barrup,* 51 B.R. 318, 319, *reh'g & stay pending appeal denied,* 53 B.R. 215 (Bankr.D.Vt.1985) ("should a creditor institute suit in state court post-discharge, such creditor will have violated an injunction").

However, one must recognize that while section 524(a) enjoins an entity from seeking to enforce the personal liability of a debtor on a discharged debt, "[a] discharge does not cancel the obligation; the obligation still exists. A discharge merely disables the creditor from enforcing its claim." *In re Sure–Snap Corp.,* 983 F.2d at 1018 (quoting *Wagner v. United States,*

573 F.2d 447 (7th Cir.1978)). Similarly, as the bankruptcy court explained in *In re Harris,* 85 B.R. 858, 863 (Bankr.D.Colo. 1988), "[t]he discharge injunction of 11 U.S.C. § 524 does not extinguish a debt, but prohibits debt collection and relieves the debtor from personal liability on the debt and enjoins a creditor with a discharged claim from commencing or continuing actions to collect on any such debt." *See also First Fidelity Bank v. McAteer,* 985 F.2d 114 (3d Cir.1993) (a creditor may recover the full amount of the original obligation from the debtor's insurer rather than the smaller "cram down" amount provided in the debtor's confirmed chapter 13 plan notwithstanding the discharge); *In re Jet Florida Systems, Inc.,* 883 F.2d 970, 973 (11th Cir.1989) ("a surety, who is secondarily liable to the obligee, is not shielded by the obligor's bankruptcy or section 524 injunction").

This was equally true under the former Bankruptcy Act. *Accord Wagner v. United States,* 573 F.2d 447, 453 (7th Cir.1978) (noting that "a discharge does not cancel the obligation; the obligation still exists. A discharge merely disables the creditor from enforcing its claim"); *Beneficial Finance Company of Oklahoma v. Sidwell,* 382 F.2d 275, 276 (10th Cir.1967); *United States v. Midwest Livestock Producers Coop.,* 493 F.Supp. 1001, 1002 (E.D.Wis. 1980). And "[n]either the language [of section 524] nor the legislative history makes any indication that the position of Section 14f regarding the effect of discharge upon debts has been changed." *Matter of Cassi,* 24 B.R. 619, 626 (Bankr.N.D.Ind.1982). "Section 524(a) is substantially the same as Section 14f." *Id.* at 622. *Accord In re Service Decorating Co.,* 105 B.R. 859, 862 (N.D.Ill.1989) (Section 1141 "does not appear to have altered" practice pursuant to the Act).

Because a discharge does not extinguish the debt itself, there is no prohibition in the Code against filing a proof of claim after the entry of the order of discharge. If the proof of claim is timely under the bankruptcy procedural rules, it is not barred by discharge.

For example, Fed.R.Bankr.P. 3002(c), in relevant part, requires a creditor in a chapter 7 case to file a proof of claim "within 90 days after the first date set for the meeting of creditors called pursuant to § 341(a) of the Code". Rule 4004(a), however, requires a creditor to file a complaint objecting to the debtor's discharge under section 727(a) "not later than 60 days following the first date set for the meeting of creditors held pursuant to § 341(a)." Rule 4004(c) then states that "[i]n a chapter 7 case, on expiration of the time fixed for filing a complaint objecting to discharge and the time fixed for filing a motion to dismiss the case pursuant to Rule 1017(e) [which is also 60 days from the first meeting of creditors], the court shall forthwith grant the discharge."

Therefore, although a bankruptcy court could grant the a chapter 7 debtor a discharge on the sixty-first day following the first date set for the § 341(a) meeting, creditors would still have 29 additional days to file proofs of claim. Thus, the entry of a discharge order does not, by itself, act as a bar to all later filed proofs of claim.

### B.

■ The same result follows in chapter 11. That is, if the chapter 11 bar date established by a court under Rule 3003(c) is after confirmation, the entry of the confirmation order—even though it has the effect of ordering a discharge—does not preclude *a creditor from filing a timely proof of claim.*

In the instant dispute, UTCC's prepetition claim was deemed allowed by virtue of the debtor's schedules. Its postconfirmation claim is not discharged, and that may be asserted in state court. Its postpetition/preconfirmation claim would have been an administrative claim, but UTCC never made a request for payment under section 503.

The Bankruptcy Code, however, does not provide any deadline by which a claimant must file a request for payment of an administrative expense in the bankruptcy court. *See* L. King, 3 *Collier on Bankruptcy,* ¶ 503.01, at 503–3 to 503–4 (15th ed. 1993) ("The statute does not provide for a time when a request for administrative expenses should be made ..."). Rather, section 503(a) merely provides that "[a]n entity *may* file a request for payment of an administrative expense." 11 U.S.C. § 503(a) (emphasis added).

■ An administrative claimant technically is not a "creditor" as defined by the bankruptcy code, and, therefore, is not required to file a proof of claim by virtue of Rules 3002 or 3003. 11 U.S.C. § 101(10) (defining "creditor" as, *inter alia,* an "entity that has a claim against the debtor that arose at the time of or before the order for relief"). *See Matter of West Johnson Corp.,* 96 B.R. 182, 183 (Bankr.W.D.Wis. 1988) (administrative claimants, in an unconverted case, are not required to file proofs of claim).[7] As explained by one court:

> The legislative history ... [accompanying § 503] stated that "[t]he Rules of Bankruptcy Procedure will specify the time, the form, and the method of such a filing." H.Rep. No. 595, 95th Cong., 1st Sess. 355 (1977).... Unfortunately, the rules do not give the guidance Congress had hoped they would. In fact, they give no guidance at all. Bankruptcy Rule 3003 is clearly drafted to implement Section 502, not Section 503. There is no implementing rule for the latter section, despite Congress' suggestion.

*In re MacDonald,* 128 B.R. 161, 165 n. 5 (Bankr.W.D.Tex.1991).[8]

Although a bankruptcy court has the general authority to impose an administra-

---

7. An administrative claimant may, however, become a "creditor" upon conversion. *See In re Johnson,* 901 F.2d 513, 519–21 (6th Cir.1990); *see generally In re Benjamin Coal Co.,* 978 F.2d at 827 n. 1 (citing *In re Johnson* ).

8. Apparently, in 1991, the Advisory Committee to the Federal Bankruptcy Rules considered and then rejected a proposal to set a deadline for the filing of general administrative claims. *See* W. Norton, Jr., *Norton Bankr. Rules Pamphlet 1992–93 Ed.* 169 (Editors' Comment to Fed. R.Bankr.P. 2016).

tive bar date, *see In re Conroy*, 144 B.R. 966, 972 (Bankr.W.D.Pa.1992); *In re Holywell Corp.*, 68 B.R. 134, 137 (Bankr. S.D.Fla.1986), the debtor here did not seek an order setting a deadline for filing administrative claims, and no such order was entered. Alternatively, a chapter 11 debtor may possibly seek to impose an administrative claims bar date by establishing an administrative claims filing deadline as a provision of a confirmed plan. *E.g., In re Dahlgren Intern., Inc.* But the plan here contained no such deadline.

The lack of any deadline, though, does not yield an unlimited time for administrative creditors to seek compensation from the bankruptcy estate. The equitable principles of laches and estoppel may preclude an entity from asserting an administrative claim. *See In re Chicago Pacific Corp.*, 773 F.2d 909, 917–18 (7th Cir.1985). Similarly, consummation of a debtor's plan of reorganization may effectively bar an entity entitled to an administrative expense claim from recovering any distribution on that claim from a debtor's estate. *See In re B. Cohen & Sons Caterers, Inc.*, 147 B.R. 369, 376 (Bankr.E.D.Pa.1992); *see generally In re Marcus Hook Development Park, Inc.*, 943 F.2d 261, 267 (3d Cir.1991) (an attempt to undo the effect of confirmation may be barred by laches). Indeed, here the debtor suggests that UTCC's demand for payment of postpetition lease payments comes too late and should be barred.

In the instant proceeding, however, I need not and do not consider whether laches or estoppel would preclude UTCC from recovering on its administrative claim in this bankruptcy court because UTCC has not sought the allowance of any administrative claim. Therefore, I decline the debtor's invitation to resolve this issue within the present adversary proceeding.

## V.

In conclusion, UTCC has violated the section 524 injunction by pursuing the debtor's personal liability on discharged preconfirmation claims in a state court forum. Partial summary judgment in favor of the debtor is warranted, and the defendant shall be enjoined from violating section 524. *See, e.g., Matter of Rosteck; Matter of Phoenix Steel Corp.* (enjoining a creditor from proceeding against a debtor to recover on a discharged claim and requiring the creditor to dismiss its complaint); *Matter of Askew; see generally In re Morristown & Erie R. Co.*, 885 F.2d 98, 100 (3d Cir. 1989) ("[s]ection 105(a) authorizes the bankruptcy court ... to fashion such orders as are required to further the substantive provisions of the Code").

UTCC may, however, proceed against the debtor in state court for damages arising from the debtor's postconfirmation use or possession of the leased tank cars.

An appropriate order shall be entered.

## ORDER

AND NOW, this 15th day of April 1993, for the reasons stated in the accompanying memorandum, it is hereby ordered that summary judgment is granted in part in favor of the plaintiff and against defendant Union Tank Car Company. Defendant is enjoined from proceeding with litigation outside of this court in which it seeks damages based upon the debtor's possession or use of any property of UTCC on or before July 26, 1991, the date of the order confirming the debtor's plan of reorganization. 11 U.S.C. § 105(a).

It is further ordered that summary judgment is partially granted in favor of the defendant and against the plaintiff/debtor. The effect of confirmation does not discharge any postconfirmation liability which the plaintiff may have for the use or possession of the defendant's property after July 26, 1991. The defendant may proceed with state court litigation against the debtor based upon its postconfirmation damage claims.