OPINION OF THE COURT
 

 GREENBERG, Circuit Judge.
 

 I
 

 BACKGROUND
 

 This is an appeal from an order of the district court affirming a bankruptcy court
 
 *825
 
 order denying as untimely David Benjamin’s claim against the Chapter 7 estate of Benjamin Coal Company (BCC). This court has jurisdiction pursuant to the bankruptcy appeal provisions of 28 U.S.C. § 158(d). BCC originally filed a Chapter 11 petition in October 1984 and converted that reorganization case to a Chapter 7 liquidation in June 1989. After the conversion to Chapter 7, an initial meeting of creditors was held on August 9,1989, thus establishing a bar date of November 9, 1989, pursuant to Bankruptcy Rule 3002(c), for the filing of claims against the debtor’s estate. The claim of David Benjamin at issue on this appeal arose from Benjamin’s assignment of several surface mining leases to BCC during its Chapter 11 proceeding and from Benjamin’s subsequent loans to BCC, pursuant to order of the bankruptcy court, of funds that had been paid to Benjamin by BCC as compensation for the lease assignments.
 

 BCC was a family-owned surface mining company that had operated in eastern and central Pennsylvania for over 70 years. Apparently due to what BCC’s Chapter 11 reorganization plan Disclosure Statement termed “the emphasis placed by [BCC] on production rather than reclamation during the period 1974-1980,” in 1983 it was necessary for BCC to enter into a consent decree with the Pennsylvania Department of Environmental Resources calling for substantial reclamation expenditures over the next several years. Because of those obligations and a general economic downturn in the coal industry in the early 1980s, BCC filed a Chapter 11 petition on October 1, 1984.
 

 Appellant, David Benjamin, was the majority shareholder and president of BCC. BCC typically acquired resources for its mining operations by purchasing mining rights from the fee owners of coal-rich lands. In the early 1980s, David Benjamin personally acquired several such surface mining leases, paying the fee owners advance royalties and also paying finder’s fees and certain costs of preparing the lands for mining. Benjamin expended over $340,000 for these leases.
 

 By the fall of 1984, BCC was already mining the leased lands and those operations were among its most profitable. Thus, in November 1984, BCC moved before the bankruptcy court for approval of an assignment of the leases by Benjamin to BCC. However, the proposed transaction was modified considerably before it was accepted by the bankruptcy court. Ultimately, by order dated December 17, 1984, the bankruptcy court accepted an agreement of assignment whereby BCC would reimburse Benjamin for prepaid royalties out of the normal royalty flow from mining operations on. the leased lands; in addition, BCC would pay to Benjamin a royalty override of two percent to reimburse him for finder’s fees and costs of preparation for mining. To make sure BCC had sufficient funds for its operations and for the acquisition of more leases, Benjamin was required to loan back to BCC all amounts that he was paid for the assignments. The bankruptcy court gave Benjamin an administrative claim with super-priority under Section 364(c)(1) of the Bankruptcy Code for amounts he loaned back to BCC under the lease assignment agreement. The payments to and from Benjamin were to pass through a “Loan Repayment Account” to be maintained at Equibank, although that account was never established and BCC and Benjamin apparently made the required payments directly to one another. Benjamin was to have a security interest in that account, but his security interest would be subordinate to the security interests of Equibank and Citibank, BCC’s largest secured creditors. For his contemplated loans to BCC, Benjamin was to receive interest at one percent above Equibank’s prime rate. The order establishing Benjamin’s obligation to make the loans and allowing his administrative claim provided for full repayment to Benjamin by one of several contingent dates; in the event, repayment would have been due to Benjamin under the terms of the order no later than June 30, 1985.
 

 The bankruptcy court confirmed a reorganization plan for BCC on October 4, 1985. BCC completed its mining on the leased lands sometime after the confirma
 
 *826
 
 tion of the. reorganization plan, but before BCC’s voluntary conversion to a Chapter 7 liquidation proceeding. By the completion of mining, Benjamin received in royalties, and reloaned to BCC, over $340,000. Under BCC’s Chapter 11 plan, Benjamin had been given a. Class XI claim for amounts due him under the assignment agreement and subsequent loan transactions. The plan specified that Class XI claims were to receive payment of one-eighth of their full value on the 15th day after the confirmation of the plan. The plan further assured that all Class XI claims were to be paid in full by the effective date of the plan,
 
 i.e.,
 
 by June 30, 1986.
 

 BCC could not fulfill the terms of its confirmed plan. BCC operated under the plan for several years but by 1989 the company suffered adverse effects from a coal-industry labor strike and from the resulting loss of a key supply contract. On June 30, 1989, BCC moved before the bankruptcy court to convert its Chapter 11 case into a Chapter 7 liquidation. Benjamin’s claim was listed on BCC’s Chapter 7 schedules, and Benjamin therefore would have received notice, pursuant to Bankruptcy Rule 2002(a), of the claims bar date of November 9, 1989, established in the Chapter 7 proceeding. On December 18, 1989, Benjamin filed a “Proof of Claim” seeking over $340,000 for loans to BCC, plus over $135,000 in interest. The Chapter 7 trustee objected to Benjamin’s claim as untimely.
 

 The bankruptcy court found that Benjamin’s claim was an untimely filed general unsecured claim, not entitled to any priority under 11 U.S.C. § 507 or 11 U.S.C. § 364(c)(1). The bankruptcy court reasoned that, because of the confirmation of BCC’s Chapter 11 plan, Benjamin’s claim lost its priority administrative status and, relative to BCC’s subsequent Chapter 7 proceedings, became a general unsecured, post-confirmation, pre-conversion claim.
 

 The district court affirmed, holding that the effect of BCC’s reorganization plan was to convert Benjamin’s claim into an unsecured general debt for the balance owed by the reorganized BCC as of the effective date of the confirmed plan. The district court concluded that the preservation of administrative claims in a converted case provided by Section 348(d) of the Bankruptcy Code does not apply if there has been a confirmation of a Chapter 11 plan and a consequent discharge of prior claims under 11 U.S.C. § 1141(d). Both the bankruptcy court and the district court also made several additional rulings on subsidiary issues,
 
 e.g.,
 
 whether the bankruptcy court’s allowance of Benjamin’s former administrative claim in the Chapter 11 case was sufficient to constitute an “actually filed” proof of claim under Bankruptcy Rule 1019(3).
 

 II.
 

 DISCUSSION
 

 This court will affirm the district court on the grounds that the confirmation of the Chapter 11 plan discharged the administrative claim previously granted to Benjamin by order of the bankruptcy court. Thereafter, Benjamin had only an unsecured non-priority contractual claim based on the terms of the plan and, inasmuch as those terms were not fulfilled, Benjamin was obligated to file his proof of claim in timely fashion after the conversion to a Chapter 7 case. Because the discharge provision of 11 U.S.C. § 1141(d) completely resolves the issue presented here, we will not address any of the additional rulings of the bankruptcy court or the district court.
 

 Benjamin’s central argument in support of the validity of his claim in the Chapter 7 case is that Section 348(d) of the Bankruptcy Code resurrects his administrative priority claim, despite the intervening confirmation of BCC’s Chapter 11 plan. Section 348(d) provides:
 

 A claim against the estate or the debtor that arises after the order for relief but before conversion in a case that is converted under section 1112, 1307, or 1208 of this title,
 
 other than a claim specified in section 503(b) of this title,
 
 shall be treated for all purposes as if such claim had arisen immediately before the date of the filing of the petition. (Emphasis added.)
 

 
 *827
 
 Thus, Section 348(d) relegates all claims in a converted case to pre-petition status,
 
 except
 
 Section 503(b) administrative expense claims. Benjamin therefore argues that administrative claims, such as his own claim in BCC’s Chapter 11 case, are granted a special continuing administrative priority by Section 348(d); and that despite the confirmation of BCC’s Chapter 11 plan, he still should have an administrative priority claim in the converted Chapter 7 case. In addition, Benjamin argues that the bankruptcy court’s allowance of the lease assignments in the Chapter 11 case constituted an informal proof of claim. Therefore, pursuant to Bankruptcy Rule 1019(3), Benjamin’s claim was “actually filed” in the Chapter 11 case, and “deemed filed” in the Chapter 7 case, obviating any need for a new filing prior to the bar date in the Chapter 7 case.
 

 Benjamin’s argument in the final analysis is incorrect. As the trustee correctly maintains, the discharge of all existing claims, including administrative claims, upon confirmation of a Chapter 11 plan is unambiguous both in the Bankruptcy Code and in BCC’s own reorganization plan, which respectively provide:
 

 Except as otherwise provided in this subsection [exceptions not relevant here], in the plan, or in the order confirming the plan, the confirmation of a plan—
 

 (A) discharges the debtor from any debt that arose before the date of such confirmation____ (11 U.S.C. § 1141(d)(1).)
 

 Upon the Confirmation Date, the Debtors shall be discharged of the claims of all Claimants, Interest holders and all other entities. The only remaining obligations of the Debtors shall be as specified in the Plan. (Amended Plan of Reorganization, August 26, 1985, p. 18.)
 

 As the trustee suggests, the discharge provided by Section 1141(d) presumes that, in the process of formulating and voting on a reorganization plan, all classes of claimants will be able to use whatever leverage they may have, such as priority status, to effect the best treatment they can obtain for their particular claims. However, once the reorganization plan is approved by the bankruptcy court, each claimant gets a “new” claim, based upon whatever treatment is accorded to it in the plan itself. Thereafter, each claimant’s remedies for any future nonpayment of claims acknowledged in the plan are limited to the usual remedies for the type of claim granted by the plan’s provisions.
 

 Section 348(d) unquestionably would have preserved an administrative claim for Benjamin if he had possessed an administrative claim at the time of the conversion to Chapter 7. However, Section 348(d) simply does not speak to the treatment of
 
 former
 
 administrative claims if a confirmed reorganization plan has intervened between the Chapter 11 filing and the subsequent conversion. When the Chapter 11 plan of BCC was confirmed, Benjamin simply no longer had an “administrative claim” — he then had only the contractual claim upon the debtor, i.e., the right to one-eighth payment 15 days after confirmation and the right to full payment by June 30, 1986, that was created for him in the plan.
 
 [1]
 

 Benjamin cites In
 
 re White Farm Equipment Company,
 
 943 F.2d 752 (7th Cir. 1991),
 
 cert. denied,
 
 — U.S. —, 112 S.Ct. 1292, 117 L.Ed.2d 515 (1992), as if it were authority for the general proposition that the continuing administrative status of claims in a converted case outweighs the effect of a Section 1141(d) discharge. However,
 
 White Farm Equipment
 
 reaches a much more limited result and is distinguishable from our case. In
 
 White Farm,
 
 a debtor filed successive Chapter 11 cases, the second for the purpose of liquidation
 
 *828
 
 after the confirmed plan in the first Chapter 11 case could not be fulfilled. Despite the intervening confirmed plan, the court of appeals found that a priority claim of the Internal Revenue Service for trust fund taxes retained its priority status in the second Chapter 11 case. It is notable that the result in
 
 White Farm
 
 is heavily dependent upon the nature of the claim as a tax obligation. Moreover, even as so limited, it appears that the holding in
 
 White Farm
 
 may be contrary to the legislative intent underlying Section 1141(d)(2). While the Senate version of that section originally saved certain taxes from discharge upon confirmation of a plan, that version was rejected in favor of an unconditional discharge of all taxes for reorganized corporate debtors.
 
 Compare
 
 S.Rep. No. 95-989, 95th Cong., 2d Sess. 129-30 (1978),
 
 reprinted in
 
 1978 U.S.C.C.A.N. 5787, 5915-16 (discussing types of taxes nondischargeable under Senate version of Section 1141(d)(2));
 
 with
 
 124 Cong.Rec. H11,089 (1978),
 
 reprinted in
 
 1978 U.S.C.C.A.N. 6436, 6478 (statement of Congressman Edwards): “section 1141(d)(2) of the House amendment is derived from the House bill as preferable to the Senate amendment____ Retaining an exception for discharge with respect to nondischargeable taxes would leave an undesirable uncertainty surrounding [corporate or partnership] reorganizations that is unacceptable.” While the latter statement was interpreted in
 
 White Farm,
 
 943 F.2d at 757, as referring only to the uncertainties of “hidden liabilities,” it may well be that the specific rejection of a nondischargeable tax provision by Congress means that all tax claims* including trust fund' claims, are discharged at a plan’s confirmation by operation of Section 1141(d).
 

 The court in
 
 White Farm
 
 also distinguished its own prior decision in
 
 In re Jartran, Inc.,
 
 886 F.2d 859 (7th Cir.1989), where it had affirmed a bankruptcy court order holding that a creditor, who had been an administrative claimant in the debtor’s first Chapter 11 case, would be denied administrative status in a second Chapter 11 case because of the intervening confirmation of the reorganization plan in the first Chapter 11 proceeding. Indeed, the court of appeals specifically noted in
 
 White Farm,
 
 943 F.2d at 757, that the bankruptcy court order affirmed in
 
 Jartran
 
 had held “that administrative claims arising from expenses incurred solely to preserve the first estate were not entitled to administrative priority in a second bankruptcy proceeding.”
 

 Thus
 
 White Farm,
 
 even aside from its debatable, interpretation of the effects of Section 1141(d) on tax claims, is distinguishable from our case because it accords special treatment to a tax trust fund claim. Benjamin’s claim is actually more like the administrative priority claim denied priority status in a second Chapter 11 filing in
 
 Jartran. See also In re Shepherd Oil, Inc.,
 
 118 B.R. 741 (Bankr.D.Az.1990) (priority claimant in Chapter 11 proceeding lost priority status upon confirmation of a reorganization plan, and had only a breach of contract claim in a successive Chapter 11 proceeding of the same debtor). Altogether, the plain text of Section 1141(d) strongly supports the trustee’s argument that, post-confirmation, Benjamin no longer had an administrative claim and therefore failed timely to file his “new” contractual claim in BCC’s Chapter 7 case.
 
 White Farm
 
 certainly does not contradict that result for a non-tax administrative claim, and
 
 Jartran
 
 would support it.
 

 III.
 

 CONCLUSION
 

 We will affirm the district court’s February 25, 1992, order affirming the bankruptcy court order of April 30, 1991, that disallowed David Benjamin’s claim as untimely filed.
 

 [1]
 

 . It appears that Benjamin may have made additional loans to BCC after the effective date of the confirmation. Even if such loans could be considered administrative claims under Section 503(b), arising post-petition, post-confirmation but pre-conversion, they would nevertheless be subject to the filing of proof of claim requirements set by the bankruptcy court.
 
 See In re Johnson,
 
 901 F.2d 513, 520 (6th Cir.1990).
 

 We do not address the alternative holding of the bankruptcy judge that the court's allowance of Benjamin's priority claim did not constitute an "informal filing’’ and we do not rely upon that ruling as a basis for our holding here.