**In re Arthur M. TOWNSEND, III, Debtor.**

**Bankruptcy No. 95–42286–D.**

United States Bankruptcy Court,
W.D. Tennessee,
Western Division.

Oct. 2, 1995.

Michael Martineau, U.S. Department of Justice, Tax Division, Washington, DC, Barbara Zocolla, U.S. Attorney Office, Memphis, TN, for U.S.

Norman Hagemeyer, Memphis, TN, for debtor.

MEMORANDUM OPINION AND ORDER ON DEBTOR'S "OBJECTION TO CLAIM OF INTERNAL REVENUE SERVICE AND MOTION TO DETERMINE TAX LIABILITY UNDER 11 U.S.C. § 505" AND "INTERNAL REVENUE SERVICE'S OBJECTION"

BERNICE BOUIE DONALD,
Bankruptcy Judge.

This core proceeding[1] came on for hearing on debtor's Objection to the Claim of the Internal Revenue Service. The Debtor, Arthur M. Townsend, III ("Debtor") and the Internal Revenue Service ("the IRS") filed briefs in the matter setting forth the operative background facts and the salient points of law. The facts are not in substantial dispute and are set forth herein from the pleadings and memoranda. The overarching issue for judicial determination is whether certain tax liabilities which were a part of the Debtor's previously confirmed chapter 11 plan and scheduled to be paid at 33% must be included as priority debts and scheduled for payment in full. Secondly, the court is asked, "Is the Debtor liable for payment of certain tax liabilities which were discharged in a previous chapter 11 plan?" The Court considered the written briefs of the parties, heard oral arguments, and now makes these written findings of fact and conclusions of law pursuant to F.R.B.P. 7052.

## CASE SUMMARY

The Debtor commenced the instant chapter 11 case on November 11, 1994. The Debtor filed a previous chapter 11 case May 22, 1991,[2] in which a plan was confirmed on June 4, 1992

On April 28, 1992, in the prior chapter 11 case, the IRS filed a proof of claim asserting: (1) secured claims for unpaid federal income taxes, and statutory additions, for the years 1979, 1984, 1986, 1987, and 1988 in the amount of $214,376.12; (2) priority claims for Form 941, Federal Insurance Contributions Act ("FICA") taxes, and statutory additions, for the first and second quarters of 1991, and

federal income taxes, and statutory additions, for the year 1990, in the amount of $71,-986.14; and (3) general unsecured claims for federal income tax, and statutory additions, for the year 1989, in the amount of $10,-713.86. The total claim amounted to $299,-076.12.

On May 6, 1992, the Debtor filed the First Amended Plan of Reorganization ("the First Amended Plan"), asserting that the IRS was secured only to the extent of $25,100 and that the IRS had priority claims in the amount of $166,057.54. The First Amended Plan provided that the priority claims of the IRS would be paid in equal monthly installments of $2,200 for sixty months, including accrued interest.

By order entered June 4, 1992, in the prior chapter 11, the bankruptcy court confirmed the First Amended Plan. The IRS did not file an objection to the First Amended Plan. The confirmation of the First Amended Plan constituted a discharge pursuant to 11 U.S.C. § 1141.

The Debtor made timely payments pursuant to the confirmed First Amended Plan for approximately two years before defaulting in 1994. The First Amended Plan was substantially consummated.

On November 1, 1994, Debtor filed a petition for relief under chapter 11 of the Bankruptcy Code, case number 94–31186–BBD–11 ("the instant case" or the "1994 case.").

On November 9, 1994, the IRS filed a proof of claim in the instant case asserting: (1) secured claims for unpaid federal income taxes, and statutory additions, for the years 1986, 1987, and 1988 in the amount of $165,-746.23; (2) priority claims for Form 941 taxes, and statutory additions, for the second quarter of 1991, and for the second quarter of 1994, and unpaid federal income taxes for the years 1990 and 1993 in the amount of $206,341.62; and (3) general unsecured claims consisting of penalties to the petition date on the priority claims in the amount of $20,777.71. The total claim amounted to $392,865.46.

1. 28 U.S.C. §§ 157(b)(2)(A)(L) and (O).

2. Case No. 91–25659–K.

On May 26, 1995, the Debtor filed an Objection to Claim of Internal Revenue Service and Motion to Determine Tax Liability Under 11 U.S.C. § 505 ("Debtor's Objection"). In the Objection, the Debtor objected to that portion of the claim filed by the Internal Revenue Service in the 1994 case which included taxes which were discharged in the Prior Chapter 11. On July 3, 1995, the IRS timely filed its objection to the Debtor's Objection.

On August 14, 1995, the IRS filed an amended proof of claim, amending the November 9, 1994 proof of claim and asserting: (1) secured claims for unpaid federal income taxes, and statutory additions, for the years 1986, 1987, and 1988 in the amount of $165,-746.23; (2) priority claims for Form 941 taxes, and statutory additions for the second quarter of 1991 and the second and third quarters of 1994, and unpaid federal income taxes for the years 1990 and 1993 in the amount of $213,412.04; and (3) general unsecured claims consisting of penalties to the petition date on the priority claims in the amount of $20,771.71. The total claim amounted to $399,935.98.

### DISCUSSION

■ Chapter 11 of the United States Bankruptcy Code provides a means for entities to reorganize under a bankruptcy plan, instead of liquidating. Reorganization consists of deciding "[which parties] should share the losses incurred by an unsuccessful business and how the values of the estate should be apportioned among creditors and stockholders." S.Rep. No. 95–989 U.S.Code Cong. & Admin.News 1978 pp. 5787, 5796. Individuals can utilize the provisions of chapter 11 to reorganize, as did the Debtor in this case. *Toibb v. Radloff,* 501 U.S. 157, 111 S.Ct. 2197, 115 L.Ed.2d 145 (1991). However, chapter 11 is used mostly in the reorganization of enterprises' business. It allows the business enterprise to continue as a going-concern, instead of liquidating. Generally, an ongoing concern is more valuable than the sum of its assets sold separately. Creditors typically prefer that Debtors reorganize, instead of liquidating, because the creditors generally receive more money from an operating business than from a dissolved one that is distributing its assets.

■ Upon the filing of a chapter 11 bankruptcy petition, the Debtor assumes Debtor-in-possession status. See, 11 U.S.C. § 1101. As Debtor-in-possession, the Debtor continues to operate the business, and is vested with the rights, powers, and responsibilities of a chapter 11 trustee. The Debtor must perform the functions and duties required of a trustee, which are described in 11 U.S.C. §§ 1106 and 1107 and Bankruptcy Rule 2015(a). However, the Debtor is not responsible for performing the investigative functions of a trustee in bankruptcy. *Wolf v. Weinstein,* 372 U.S. 633, 649–650, 83 S.Ct. 969, 979–980, 10 L.Ed.2d 33 (1963).

Claim is statutorily defined in the Bankruptcy Code as a "right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured." 11 U.S.C. § 101(5)(A) Upon filing the bankruptcy petition, the Debtor submits a schedule of liabilities. The Debtor is responsible for giving notice to the scheduled creditors. In accordance with 11 U.S.C. § 1111, a creditor whose claim is not listed or who disputes the amount of the debt listed, must file a proof of claim pursuant to F.R.B.P. 3003. Documentation describing the amount and legitimacy of the claim must be attached to the proof of claim form. Under 11 U.S.C. § 1123(a)(1), a plan must designate the claims into specific classes based on the nature of the claims. Each claim within the certain classifications must be given equal treatment. If the claims are properly classified, the plan is filed in good faith, is fair and equitable, and, inter alia, meets the best interest of creditors test, the plan may be confirmed. 11 U.S.C. § 1141. Confirmation of the plan discharges the Debtor from certain debts. 11 U.S.C. § 1141(d)(1). However, confirmation of the plan does not discharge a debt if the Debtor would be denied a discharge under 11 U.S.C. § 727(a), nor from debts that would not be dischargeable under 11 U.S.C. § 523.

Under 11 U.S.C. § 727(a), a Debtor can be granted a discharge for certain debts. A

discharge is a privilege, not a right. S.Rep. No. 989. The privilege of a discharge will not be allowed if one of the following situations occur:

(1) the Debtor is not an individual;

(2) the Debtor, with intent to hinder, delay, or defraud a creditor or an officer of the estate charged with custody of property under this title, has transferred, removed, destroyed, mutilated, or concealed, or has permitted to be transferred, removed, destroyed, mutilated, or concealed—

(A) property of the Debtor, within one year before the date of the filing of the petition; or

(B) property of estate, after the date of the filing of the petition;

(3) the Debtor has concealed, destroyed, mutilated, falsified, or failed to keep or preserve any recorded information, including books, documents, records, and papers, from which the Debtor's financial condition or business transactions might be ascertained, unless such act of failure to act was justified under all of the circumstances of the case;

(4) the Debtor knowingly and fraudulently, in or in connection with the case—

(A) made a false oath or account;

(B) presented or used a false claim;

(C) gave, offered, received, or attempted to obtain money, property, or advantage, or a promise of money, property, or advantage, for action or forbearing to act; or

(D) withheld from an officer of the estate entitled to possession under this title, any recorded information, including books, documents, records, and papers, relating to the Debtor's property or financial affairs;

(5) the Debtor has failed to explain satisfactorily, before determination of denial of discharge under this paragraph, any loss of assets or deficiency of assets to meet the Debtor's liabilities;

(6) the Debtor has refused, in the case—

(A) to obey any lawful order of the court, other than an order to respond to a material question or to testify;

(B) on the ground of privilege against self-incrimination, to respond to a material

question approved by the court or to testify, after the Debtor has been granted immunity with respect to the matter concerning which such privilege was invoked; or

(C) on the ground other than the properly invoked privilege against self-incrimination, to respond to a material question approved by the court or to testify;

(7) the Debtor has committed any act specified in paragraph (2), (3), (4), (5), or (6) of this subsection, on or within one year before the date of the filing of the petition, or during the case, in connection with another case, under this title or under the Bankruptcy Act, concerning an insider;

(8) the Debtor has been granted a discharge under this section, under section 1141 of this title, or under section 14, 371, or 476 of the Bankruptcy Act, in a case commenced within six years before the date of the filing of the petition;

(9) the Debtor has been granted a discharge under section 1228 or 1328 of this title, or under section 660 or 661 of the Bankruptcy Act, in a case commended within six years before the date of the filing of the petition, unless payments under the plan in such case totaled at least—

(A) 100 percent of the allowed unsecured claims in such case; or

(B)(i) 70 percent of such claims; and

(ii) the plan was proposed by the Debtor in good faith, and was the Debtor's best effort; or

(10) the court approves a written waiver of discharge executed by the Debtor after the order for relief under this chapter.

11 U.S.C. § 727(a).

The discharge releases the Debtor from "all debts that arose before the date of the order for relief". 11 U.S.C. § 727(b).

In order to assess the status of the tax liability in the instant case, Bankruptcy Code §§ 1141(a) and (d) and 523(a)(1) must be read in pari materia.

11 U.S.C. § 1141(a) provides in relevant part:

Except as provided in subsections (d)(2) and (d)(3) of this section, the provisions of a confirmed *plan bind the Debtor, any*

*entity issuing securities under the plan, any entity acquiring property under the plan, and any creditor, equity security holder,* or general partner in, the Debtor, whether or not the claim or interest of such creditor, equity security holder, or general partner is impaired under the plan and whether or not such creditor, equity security holder or general partner has accepted the plan.

(Emphasis added)

Further, 11 U.S.C. § 1141(d)(1) provides in part:

Except as otherwise provided in this subsection, in the plan, or in the order confirming the plan, the confirmation of a plan—

(A) discharges the Debtor from any debt that arose before the date of such confirmation, and any debt of a kind specified in section 502(g), 502(h), or 502(i) of this title, whether or not—

(i) a proof of claim based on such debt is filed or deemed filed under section 501 of this title;

(ii) such claim is allowed under section 502 of this title; or

(iii) the holder of such claim has accepted the plan; and

(B) terminates all rights and interests of equity security holders sand general partners provided for by the plan.

11 U.S.C. § 523(a)(1) provides:

A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual Debtor from any debt—

(1) for a tax or a customs duty—

It is undisputed that in the Debtor's 1991 case, the confirmed plan provided a priority claim for the IRS in the amount of $105,917.68.[3]

In Class 3 [4] of the Debtor's confirmed plan, the IRS had a secured claim of $25,100. The plan provided that "[t]he IRS's lien shall be retained by the IRS to the extent of $25,100 until it is paid in full."

In Class 4, the Debtor scheduled a general unsecured claim of the IRS in the amount of $166,057.54 which claim Debtor proposed to pay 33% or $54,798.99 in $1,000 monthly payments over 70 months. The IRS did not file an objection to the plan. On June 4, 1992, the Court entered its "Order Confirming First Amended Plan of Reorganization." The order confirming the plan specifically provided:

Except as otherwise provided in Section 1141 of the Bankruptcy Code or in the Plan, this Order Confirming Amended Plan discharges the Debtor-in-possession from any debt that arose before the date of such confirmation and any debt of a kind specified in 11 U.S.C. Section 502(g), 502(h), or 502(i).

That pursuant to 11 U.S.C. Section 524, the discharge effected by the Order of Confirmation (a) voids any judgment at any time obtained, to the extent that such judgment is a determination of the personal liability of the Debtor-in-possession with respect to any debt discharged under Section 1141 whether or not discharge of such debt is waived; (b) operates as an injunction against the commencement or continuation of any action, the employment of process, or an act to collect, recover, or offset any such debt as a personal liability

---

3. Case No. 91–25659–K, Debtor's First Amended Plan of Reorganization. Class 2b Claims, the priority claim of the IRS is composed of the following:

| Year | Tax | Interest | Total |
|------|-----|----------|-------|
| 1988 | $26,194.00 | $7,737.54 | $ 33,931.54 |
| 1990 | $66,639.00 | $ 678.86 | $ 67,317.86 |
| 9106(FICA) | $ 4,668.28 | $ 0 | $ 4,668.28 |
| | | | $105,917.68 |

4. **Class 3**

The IRS has filed a secured claim for $214,376.12 for income taxes. The secured claims of the IRS will be treated as secured to the extent of

$25,100 representing the value of otherwise unencumbered property. The items on the IRS's Amended Claim # 3 which will be paid as a secured claim are:

| Year | Tax | Penalty | Interest | Total |
|------|-----|---------|----------|-------|
| 1979 | 0 | $9.00 | $19,786.75 | $19,795.75 |
| 1984 | $5,304.25 | $ 0 | $ 0 | $ 5,304.25 |
| | | | | $25,100.00 |

This secured claim shall be repaid in monthly installments of $800 over approximately 36 months at the statutory rate of interest. The IRS's lien shall be retained by the IRS to the extent of $25,100 plus interest until paid in full, at which time the lien shall be released.

of the Debtors-in-possession whether or not discharge of said debt is waived.

The Court will confirm a chapter 11 reorganization plan if all of the requirements of 11 U.S.C. § 1129(a) are met. The Court must be assured that the plan was submitted in good faith; all of the requirements and conditions specified in the Bankruptcy Code have been followed; and the plan is feasible. However, any party in interest may object to the confirmation. 11 U.S.C. § 1126 and F.R.B.P. 3018.

Confirmation of a chapter 11 plan discharges the debts provided for in the plan and creates new contractual rights between the Debtor and the creditors based on the provisions of the confirmed plan. The Debtor is discharged from any debt which arose before the confirmation, as well as claims described in § 502(g), (h), and (i). 11 U.S.C. § 1141(d)(1).

■ The pre-bankruptcy contracts are no longer valid, and the Debtor is responsible for payments to creditors as described in the plan. A provision in a confirmed chapter 11 plan is binding on all parties even if it is contrary to the bankruptcy law, unless confirmation is successfully appealed, revoked, or otherwise set aside. *In re Sullivan*, 153 B.R. 746, 751 (Bankr.N.D.Tex.1993). Thus, any qualifying tax debt which was discharged in a prior confirmed plan would be binding on the taxing authority in any subsequent plan.

■ Tax debts are granted priority under 11 U.S.C. § 507(a)(8) if they are unsecured claims. The code distinguishes between unsecured and secured claims, as well as priority and non priority claims, in order to prevent all of the bankruptcy estate assets from being used to pay taxes. *Robert O. Olson v. IRS*, 154 B.R. 276 (Bankr.D.N.D. 1993). This scheme protects unsecured creditors from receiving zero if the estate is insufficient to pay all creditors. *Id.*

One major advantage to Debtors in filing chapter 11 reorganizations, as opposed to chapter 13 reorganizations, is the timing of discharge. In a chapter 13 case, the dis-

charge of debts is deferred until all plan payments are completed. 11 U.S.C. § 1328(a). Under chapter 11 proceedings, discharge occurs when the reorganization plan is confirmed and "substantially consummated." 11 U.S.C. § 1141. In 11 U.S.C. § 1101(2) "substantial consummation" is defined as:

(A) transfer of all or substantially all of the property proposed by the plan to be transferred;

(B) assumption by the Debtor or by the successor to the Debtor under the plan of the business or of the management of all or substantially all of the property dealt with by the plan; and

(C) commencement of distribution under the plan.

For purposes of this issue, both parties have stipulated to the applicability of *Official Committee of Unsecured Creditors of White Farm Equipment Co.*[5]

The Court follows the analysis set out by the Seventh Circuit in *White Farm*. In that case, the Debtor, White Farm Equipment Corporation, filed a chapter 11 petition on September 4, 1980. The IRS filed a proof of claim asserting a priority claim for employment taxes of over $300,000. The confirmed chapter 11 plan provided for full payment of the priority tax claims of the IRS. The reorganized Debtor made few payments before defaulting under the confirmed chapter 11 plan. In May 1985, the Debtor was placed in an involuntary chapter 7. One month later, the chapter 7 case was converted into a voluntary chapter 11 liquidation. In the second chapter 11 case, the IRS filed a proof of claim asserting a priority claim for the remaining employment taxes owed to it under the confirmed chapter 11 plan. The Official Committee of Unsecured Creditors of White Farm Equipment ("the Committee") objected to the IRS' priority claim, contending that the priority claim should be reclassified as a general unsecured claim inasmuch as it consisted of amounts due from the breach of a confirmed plan of reorganization. The Committee contended that once a plan of reorganization has been confirmed, the cor-

---

**5.** 943 F.2d 752 (7th Cir.1991).

porate Debtor is discharged from any debt that arose prior to confirmation under 11 U.S.C. § 1141. *Id.* at 753–54. The bankruptcy court held for the IRS, stating that the Debtor's second chapter 11 case did not divest the priority status from the tax claims.

The Seventh Circuit, in affirming the bankruptcy court, held that a tax debt is not "stripped of its underlying character and transformed into a mere contractual obligation once it is incorporated into a confirmed plan of reorganization." *Id.* at 753. In response to the Debtor's argument that the new contractual rights created between the Debtor and IRS upon confirmation of the first chapter 11 plan replaced the original debt as well as the priority status, the Seventh Circuit stated:

> Yet such a drastic impairment of the scheme of priorities established in section 507 is not compelled by either the plain language of these statutes or the legislative history. For, as the IRS points out, section 523 may also be construed as prohibiting discharge of individual Debtors only for hidden liabilities—debts not included in the plan of reorganization because no proof of clam was ever filed. This interpretation maintains the delicate balance between priority and discharge that is erected by all three statutes. It is also entirely consistent with the legislative history.

*Id.* at 756.

The Seventh Circuit further stated that their goal was to uphold the purpose and the balancing system of the priority and discharge statutes (§§ 507, 523, and 1141) in analyzing unexpected serial chapter 11 petitions. The Court noted that in enacting the Bankruptcy Code, Congress had the tedious job of balancing three parties' interests—the general unsecured creditors and collecting the money due them; the Debtor's fresh start; and the need of the IRS to collect tax revenue. *Id.* at 756. In striving to balance these three competing interests, the Code gives priority to tax claims, but also sets a time limit on the IRS in collecting taxes due them, in order to encourage efficiency. The Senate Report describes the policy considerations as follows:

> In a broad sense, the goals of rehabilitating Debtors and giving equal treatment to private voluntary creditors must be balanced with the interests of governmental tax authorities who, if unpaid taxes exist, are also creditors in the proceeding.

S.Rep. No. 95–989 U.S.Code Cong. & Admin.News 1978, pp. 5787, 5799.

Senate Report 95–989 also considers the impact on the taxing systems if some taxpayers are relieved of their tax responsibilities. At all levels, in order to work most effectively, the tax systems must be viewed as fair and equitable to the taxpayers. If the bankruptcy rules allow some taxpayers to avoid paying their taxes, then this "presumption of fairness" and the effectiveness of the tax system are in danger. When some taxpayers are freed of their tax responsibility, the burden of covering the gap in revenues is converted to other taxpayers. S.Rep. No. 989 (1995). Thus, it is only in certain carefully prescribed situations that Congress has provided for the discharge of tax liabilities. Giving due regard to the fresh start concept, in the Bankruptcy Code, Congress has provided for the dischargeability of certain taxes. See, 11 U.S.C. § 523.

Citing *Fruehauf Corp v. Jartran,* 886 F.2d 859, 860 (7th Cir.1989), the court compared tax obligations to secured liens in that their status was intended to survive bankruptcy. In *Jartran,* an administrative claim did not retain its priority status in the Debtor's subsequent chapter 11 filing. The *White Farm* court distinguished between the tax claims and the *Jartran* administrative claims, explaining that the tax liabilities were created outside of the bankruptcy plan. However, the administrative claims were a direct result of filing the chapter 11 proceeding. *Id.* at 754. The case at bar is likewise distinguishable on its facts.

■ In the instant case, the Debtor's first bankruptcy plan, confirmed on June 4, 1992, contained a provision for the Debtor to pay 33% of a $166,058 general unsecured claim to the IRS. The plan provided for the $54,799 to be paid in monthly installments at the statutory interest rate for approximately sev-

enty months. The remaining amount of the taxes, $111,259, were therefore discharged.

The IRS now seeks to treat the subsequent filing as being in the nature of a post confirmation modification of a confirmed plan, or as a case which was dismissed post confirmation but was pre-consummation, without actually styling it in that fashion. It must be noted, however, that the Bankruptcy Code does not provide for modification of a confirmed chapter 11 plan once substantial consummation has occurred. 11 U.S.C. § 1127(b). Thus, in the instant case, even though the Debtor's plan seeks to treat obligations which were provided in the prior plan, the plan accords those debts the same priority status as in the earlier plan. The instant chapter 11 case is a new, independent filing which must be examined within the strictures of the Bankruptcy Code.

The Court is mindful that Congress did not explicitly provide for serial chapter 11 filings. However, the issue of serial filings is not squarely at issue in this case, because neither IRS nor any other party in interest has objected to the Debtor's filing. Thus, the only issue for this court is the characterization of certain tax debt provided for in the Debtor's earlier filing.

As stated earlier, the previous confirmed plan provided for discharge of certain tax debt. There was no objection filed to the treatment of IRS under the plan. The plan was confirmed "creating new contractual obligations between Debtor and IRS." Under the provisions of the plan, the Debtor was to pay 33% of $166,058 and 67% or $111,259 was discharged. The plan was confirmed and Debtor commenced making payments pursuant to provisions of the confirmed plan, thus consummating the plan.

To now hold the Debtor liable for the $111,259 which was discharged under the earlier plan would circumvent the plain language of 11 U.S.C. § 1141 and render it a nullity. The Court would have to resort to a tortuous analogy which would in essence hold that the Debtor's instant filing caused the previously discharged obligations to be resurrected and made viable for treatment in this plan. This would accord the government a special and unique status that is not provid-

ed for in the Code. This Court holds that when a plan has been confirmed and substantially consummated, and the plan is subsequently dismissed, the debt discharged in the earlier case does not spring back to life in the subsequent filing. The provisions of the confirmed plan are res judicata.

 Pursuant to the language in 11 U.S.C. § 1141(a), the discharge of taxes in a confirmed chapter 11 plan is res judicata in a subsequent filing. The Court concurs with the IRS's position, in that the portion of the Debtor's income tax debt which was to be paid as a part of the first chapter 11 plan retains the same status as the earlier case and is an allowed priority claim in the second chapter 11 plan. This result is necessary to effectuate "the balance between the priority and discharge scheme established by the Code in the context of serial chapter 11 filings." *White Farm, supra.*

The Debtor should not be able to benefit from defaulting on the first chapter 11 plan and then filing a second chapter 11 plan to receive a discharge of the original plan's obligations. The Debtor would be improving his position by defaulting on a chapter 11 plan and then commencing a second bankruptcy case. Such a windfall to the Debtor would contravene the spirit and purpose of the discharge privilege granted by 11 U.S.C. § 1141. It is clear that courts recognize that serial chapter 11 filings were unanticipated by Congress when crafting the provisions of 11 U.S.C. § 1141. It must be noted in the instant case that IRS is receiving the same amount and is being accorded the same treatment they would have gotten under the earlier plan. Thus, there is no detriment to IRS and no windfall to the Debtor.

In a case with similar facts, an Illinois court explained the uncertain situation by not strictly applying the discharge provisions, but rather by trying to uphold the Congressional intent behind 11 U.S.C. § 1141. *In re W.F. Monroe Cigar, Co., U.S. v. W.F. Monroe Cigar, Co.,* 166 B.R. 110 (N.D.Ill.1994).

At the time the Bankruptcy Code was written, serial chapter 11 filings were not a consideration. Therefore, the rules must be interpreted to maintain the purposes and

goals of the Code. Section 1141 is especially difficult to strictly apply to serial chapter 11 filings, because serial filings present unusual and unprecedented issues. In the *White Farm* case, the Seventh Circuit reasoned, in analyzing the relevant statutes concerning priority claims and discharge (11 U.S.C. §§ 507, 523, and 1141), "[w]e merely strive to interpret these statutes so as to ensure that the delicate balance of the priority and discharge scheme established by the Code is not skewed by the unanticipated development of serial chapter 11 filings." *White Farm supra,* at 757.

The Congressional purpose in giving certain tax claims an eighth priority under § 507(a)(8)(C) would also be applicable to those claims in subsequent bankruptcy filing. In *Avildsen Tools & Machine, Inc.,* the Seventh Circuit explained that the purpose of giving taxes priority in a bankruptcy reorganization is to be certain that the government receives the taxes due them and that bankruptcy filings do not cause the government to lose revenues. 794 F.2d 1248, 1254 n. 10 (7th Cir.1986).

In a similar case in Oregon, the bankruptcy court found discharging tax claims with a priority status in a chapter 11 plan did not cause the claims to become general, unsecured claims in the Debtor's subsequent chapter 11 filing. *In re Sprouse–Reitz Stores, Inc.,* 177 B.R. 679 (Bankr.D.Or.1994). The court explained "[n]othing in Sections 1141, 1129, 507 or in the confirmed plan in [the first chapter 11 case] impose[d] a metamorphosis of the tax claims into a contract or something other than a non-dischargeable tax claim under Section 507(a)(7)." *Id.* at 681.

### CONCLUSION

Considering the totality of the facts and circumstances of this case, and considering the applicable case law, this court holds that the 67% of the IRS debt ($111,259) that was discharged upon confirmation and substantial consummation of the first bankruptcy plan is no longer a debt owed by the Debtor to the IRS. The first bankruptcy plan was confirmed without objection from the IRS. Under chapter 11, the discharge occurs when the plan is confirmed not at the end when the plan has been fully performed. The 1991 case was brought under chapter 11, so the plan was substantially consummated when the Debtor commenced making payments. Therefore, upon substantial consummation, the $111,259 debt to the IRS was discharged. Under 11 U.S.C. § 1141, the order of confirmation in the first case was binding on all parties and discharged all debts except as otherwise provided for in the plan. Therefore, the Court sustains the Debtor's objection as it relates to taxes discharged in the first plan, and finds that the portion of the IRS debt discharged in the first chapter 11 plan cannot be claimed by the IRS in the second plan.

**IT IS SO ORDERED.**