**In re R. J. REYNOLDS–PATRICK COUNTY MEMORIAL HOS-PITAL, INC., Debtor.**

**No. 03–01297–WA4–11.**

United States Bankruptcy Court,
W.D. Virginia,
Lynchburg Division.

Nov. 18, 2003.

Michael E. Hastings, Roanoke, VA, for Debtor.

## MEMORANDUM

WILLIAM E. ANDERSON,
Bankruptcy Judge.

This matter comes before the court on an objection by R.J. Reynolds–Patrick County Memorial Hospital, Inc., ("the Debtor") to the priority character of the claim filed by the Internal Revenue Service ("the IRS") on behalf of the United States of America. The objection will be overruled.

### Facts

On November 17, 1999, the Debtor filed a petition with the Clerk of this court initiating a chapter 11 case ("Reynolds I"). In Reynolds I, the IRS filed an amended proof of claim in the amount of $429,604.67 for priority taxes under 11 U.S.C. § 507(a)(8) ("the Reynolds I IRS Claim"). On March 9, 2001, this court confirmed a plan of reorganization in Reynolds I that provided for treatment of the IRS claim. On March 26, 2003, the case was closed.

Also on March 26, 2003, the Debtor filed the above-styled chapter 11 petition ("Reynolds II"). On July 2, 2003, in Reynolds II, the IRS filed an amended proof of claim ("the Reynolds II IRS Claim") for a priority claim in the amount of $362,075.60 [1] based on income withholding taxes that were due for the second quarter of 1999, that is, prior to the filing of Reynolds I. At least part of this claim arose from the same debt as the Reynolds I IRS Claim.

On July 23, 2003, the Debtor filed the instant objection asserting that the IRS Claim should be characterized as a general unsecured claim and not as a priority claim. The Debtor does not dispute that it failed to pay the Reynolds I IRS Claim as

provided for by the confirmed plan in Reynolds I.

### Discussion

This court has jurisdiction over this matter. 28 U.S.C. § 1334(a). This is a core matter. 11 U.S.C. § 157(b)(2)(B). This court may render a final order.

The issue presented is whether a claim that is allowed as priority tax claim under section 507(a)(8)(C) in a chapter 11 case is transformed into a general unsecured claim in a second chapter 11 case filed by the same debtor if the debtor fails to pay the claim as provided in a plan of reorganization that is confirmed in the first chapter 11 case. This court agrees with those courts that hold that a priority claim may retain its priority character in a serial chapter 11 proceeding provided that the claim meets the statutory requirements for priority as defined by the Bankruptcy Code as the claim relates to the second chapter 11 case.

First, there is nothing in the Bankruptcy Code that provides that a priority claim is transformed into a general unsecured claim by virtue of its discharge and treatment in a chapter 11 plan. Claims in bankruptcy may be divided into three categories. They are secured claims, priority unsecured claims, and general unsecured claims. Priority claims are defined in section 507. All priority claims are vested with their priority status based on the nature of the underlying claim, that is, on the basis of what gave rise to the claim. Some priority claims are further defined by when the claim arose as measured from a date certain, such as the date that the petition is filed, or the date of assessment of the tax on which the claim is based. Consequently, some claims may be priority

---

1. The amount of the proof of claim was composed of $250,986.25 plus interest in the amount of $106,635.83.

claims in a first case, but not in a second. For example, administrative expenses are allowed as priority claims if they constitute actual necessary costs of preserving the estate that for services performed after the petition is filed. *See* 11 U.S.C. §§ 507(a)(1) & 503(b). It follows that a claim based on post-petition services rendered after the first case is filed, but before the second, may be an administrative expense in the first case, but not in the second.

■ None of the definitions of priority claims in section 507 are based on whether the claim has been previously discharged. In each case, each claim is imbued with the priority status notwithstanding whether the claim has been previously discharged. It is not for this court to provide a judicial gloss on the Bankruptcy Code by altering the definitions provided therein.

Second, there is nothing in the concept of the discharge or in the effect of the discharge that would lead this court to conclude that a discharge strips a priority claim of that status. The Debtor argues that the IRS Claim should be treated as a general unsecured claim in Reynolds II by virtue of the discharge that was granted under 11 U.S.C. § 1141(d)(1) when the plan was confirmed. The Debtor argues that as a result of the Debtor's "inability to meet the obligations contained in the Reynolds I plan of reorganization, the [Debtor] breached those repayment obligations, and that breach has established those claims as general unsecured claims in Reynolds II."

■■ It is integral to the Debtor's argument that the treatment of a priority unsecured claim in a confirmed chapter 11 plan and its subsequent discharge by statute combine to transform such a claim into a general (non-priority) unsecured claim.

Although a priority claim is, like any other allowed claim[2], discharged by the confirmation of a chapter 11 plan, it does not follow that the claim arising from its treatment in the confirmed plan is stripped of its priority character. We begin with the universally accepted tenet that debts that are discharged in bankruptcy are not extinguished.

In the pre-serial Chapter 11 universe of plan modification, conversion, or dismissal of a defaulting Chapter 11 plan, the courts borrowed the adjective "extinguished" to create a judicial gloss describing how discharge impairs a creditor's post-confirmation ability to enforce its pre-confirmation claim. When a court states that discharge "extinguishes" a debt, the judicial gloss implies, quite accurately, that the creditor can enforce only those preconfirmation claims found in the confirmed plan and that the creditor can enforce those claims only in the manner and amount specified in the confirmed plan. From a commercial vantage point, the old debt *is* "extinguished," and a new debt is put in its place. Nevertheless, the courts have recognized the gloss on § 524 for or what it is—a legal construct that describes a statutory effect—and plainly held that the statutory definition of discharge, by its own terms, does not cause the underlying debt to vanish. *Johnson v. Home State Bank,* 501 U.S. 78, 84, 111 S.Ct. 2150, 2154, 115 L.Ed.2d 66 (1991) (holding "[t]he Court of Appeals thus erred in concluding that the discharge of petitioner's *personal liability* ... constituted the complete termination of the Bank's *claim* against petitioner. Rather, a bankruptcy discharge extinguishes only one mode of enforcing a claim— namely, an action against the debtor *in*

---

**2.** There are exceptions to discharge, but none are relevant to this discussion.

personam"); *Houston v. Edgeworth (Matter of Edgeworth)*, 993 F.2d 51, 53 (5th Cir.1993) ("A discharge in bankruptcy does not extinguish the debt itself.... Section 524(e) specifies that the debt still exists...."); *Shure v. Vermont (In re Sure–Snap Corp.)*, 983 F.2d 1015, 1018, 1019 (11th Cir.1993) (holding that confirmation did not terminate debtor-creditor contract, and instead "prevented ... enforcing the terms of the Agreement ... to collect pre-confirmation debt," so that the discharged contract could therefore support award of attorney's fees incurred post–confirmation); *Copeland v. Merrill Lynch & Co., Inc.*, 162 B.R. 743, 746, 747 (E.D.La. 1993) ("the bankruptcy reorganization plan did not extinguish or 'novate' the obligations to repay or reduce the [debts]"); *Polysat, Inc. v. Union Tank Car Co. (In re Polysat, Inc.)*, 152 B.R. 886, 895 (Bankr.E.D.Pa.1993); *Shade v. Fasse (In re Fasse)*, 40 B.R. 198, 200 (Bankr.D.Colo.1984) ("Although a discharge ... relieves the debtor from personal liability ... it does not have the effect of extinguishing the debt"); *cf. Wagner v. United States*, 573 F.2d 447, 453 (7th Cir.1978) (noting "that a discharge does not cancel the obligation; the obligation still exists. A discharge merely disables the creditor from enforcing its claim") (interpreting the Bankruptcy Act of 1898).

*In re Conston, Inc.*, 181 B.R. 769, 772–773 (D.Del.1995) (A case examining the effect of chapter 11 discharge on the priority character of income taxes).[3]

What, then, is the effect of a discharge if it does not extinguish the debt? A discharge prevents a creditor from collecting the debt as a personal obligation of the debtor. *See* 11 U.S.C. § 524(a)(2)[4]. In chapter 11, the creditor is enjoined from collecting the debt as it arose pre-petition, but the debtor still has an obligation to pay the creditor in accordance with the treatment of the creditor's claim as provided in the plan. The amount of each monthly payment may change, the interest rate may change, and the time over which the payments are made may change, but the character of the claim does not necessarily change.

The parties have cited no opinions that are factually on all fours with the case at bar that do not comport with this conclusion. In *In re Official Committee of Unsecured Creditors of White Farm Equipment (In re White Farm Equipment Company)*, 943 F.2d 752 (7th Cir.1991) the Seventh Circuit held that a priority claim for trust fund taxes retained its priority in a second chapter 11 case. After the debtor filed its first chapter 11 petition (*"White Farm I"*) the Internal Revenue Service ("IRS") filed a claim for more than $300,000.00 in withholding and FICA taxes. The claim was entitled to priority for trust fund taxes under 11 U.S.C. § 507(a)(7)(C).[5] The confirmed plan of reorganization provided that the claim of the IRS would be paid in equal annual install-

---

**3.** Neither the plan nor the order confirming the plan provided that priority claims in Reynolds I were extinguished. The order confirming the plan does provide that "the debtor's liability in respect hereof is extinguished completely..." The extinguishment of the "debtor's liability", that is the debtor's legal obligation to pay the claim, is not the same as the extinguishment of the debt itself.

**4.** Section 524(a)(2) provides that a discharge operates as an "injunction against the commencement or continuation of an action, the employment of process, or an act, to collect, recover or offset any [discharged] debt as a personal liability of the debtor."

**5.** Section 507(a)(7)(C) has been re-labeled as section 507(a)(8)(C).

ments over a six-year period. The debtor defaulted on its obligation under the plan.

Subsequently, an involuntary chapter 11 petition was filed against the debtor ("*White Farm II*"). The IRS filed a proof of claim asserting that the trust fund taxes embodied in the IRS claim in *White Farm I* should be characterized as a priority claim in *White Farm II*. The creditors' committee filed an objection to the claim arguing that the claim had been discharged in *White Farm I*. The facts in *White Farm* scenario are on all fours with those in the case at bar. The *White Farm II* court concluded that trust fund taxes retain their priority character notwithstanding their age or their discharge in *White Farm I*.

Other opinions cited by the parties agree with the holding of the Seventh Circuit in *White Farm II. See In re Sprouse–Reitz Stores, Inc.*, 177 B.R. 679 (Bankr. D.Or.1994) (Holding that unpaid priority tax claims that were allowed in a first case retain their priority in a second chapter 11 case, even though the underlying claim was discharged in a confirmed plan in the first case.). *Also see U.S. v. Conston. Inc. (In re Conston, Inc.)*, 181 B.R. 769 (D.Del. 1995) and *In re Townsend*, 187 B.R. 230 (Bankr.W.D.Tenn.1995).

The sole opinion cited by the debtor in support of the argument that a discharge changes the character of a priority claim concerns the conversion of a chapter 11 case to chapter 7. In *In re Benjamin Coal Company*, 978 F.2d 823 (3rd Cir.1992), the principal shareholder of the debtor acquired coal leases pre-petition, expending $340,000.00 of his own money. The debtor then filed a chapter 11 petition. Shortly thereafter the court entered an order that permitted the shareholder to assign the leases to the debtor. The debtor paid the shareholder for the leases, but he then loaned the funds back to the debtor in order to avoid cash-flow problems. The shareholder was allowed a super-priority administrative claim under 11 U.S.C. § 364(c)(1) & 507(b) in the amount of $340,000.00 plus interest.

A plan was confirmed that provided for the payment in full to the shareholder within eight months of the date of confirmation. The debtor did not make the payments. The bankruptcy court subsequently granted a motion to convert the case to chapter 7. A chapter 7 claims bar date was set. Some 39 days after the bar date, the shareholder filed a proof of claim in the amount of $340,000.00 plus $105,000.00 in interest. He asserted that the conversion of the case resurrected his claim as an administrative priority claim under section 348(d).[6]

The Third Circuit Court of Appeals held that the claim "was an unsecured non-priority contractual claim based on the terms of the plan and, inasmuch as those terms were not fulfilled, [Mr.] Benjamin was obligated to file his proof of claim in timely fashion after the conversion" to chapter 7. *Benjamin Coal*, 978 F.2d at 826. The Court reasoned that section 348(d) ... simply does not speak to the treatment of *former* administrative claims if a

---

6. Section 348(d) provides:

(d) A claim against the estate or the debtor that arises after the order for relief but before conversion in a case that is converted under section 1112, 1208, or 1307 of this title, other than a claim specified in section 503(b) of this title, shall be treated for all purposes as if such claim had arisen immediately before the date of the filing of the petition.

confirmed reorganization plan has intervened between the Chapter 11 filing and the subsequent conversion. When the Chapter 11 plan of [the debtor] was confirmed, Benjamin simply no longer had an "administrative claim"—he then had only the contractual claim upon the debtor, *i.e.*, the right to one-eighth payment 15 days after confirmation and the right to full payment by June 30, 1986, that was created for him in the plan.

*Benjamin Coal,* 978 F.2d at 827.

The Court distinguished, and disagreed with, the holding in *White Farm.* It first noted that the opinion in *White Farm* "is heavily dependent upon the nature of the claim as a tax obligation." It also strongly intimated in dicta that the holding in *White Farm* was contrary to the legislative intent underlying 11 U.S.C. § 1142(d)(2).

As in the case at bar, the debtor in *Conston* relied on *Benjamin Coal* to support its argument that the confirmation of a chapter 11 plan strips a tax claim of its identity as a tax claim and substitutes in its stead a contractual obligation to make payments under the plan. The *Conston* Court declined to follow *Benjamin Coal* for three reasons. It first noted that the broad language and discussion of *Benjamin Coal* amounted to dicta, albeit strong dicta.

Second, the *Conston* Court noted that the court in *Benjamin Coal* does not discuss either the effect of discharge or the reasoning underpinning its conclusion that a discharge changes the character of a claim.

[T]he *Benjamin Coal* court quite simply never discussed whether a claim's intrinsic pre-petition attributes survive discharge, and the court never stated the 'new' claims granted in the reorganiza-tion plan may never acquire priority status in a subsequent Title 11 proceeding. What the court of appeals unequivocally *did* hold was that the bankruptcy created characteristic of priority does not, of its own accord, survive confirmation of the plan and automatically resurrect itself in a future Title 11 proceeding. *In re Benjamin Coal Co.,* 978 F.2d at 827. Benjamin Coal therefore did not address the issue presented by *Conston*—does confirmation change the "type of claim" so as to eliminate the characteristics that would permit the claim to qualify for priority treatment in a subsequent Chapter 11 proceeding?

*Conston,* at p. 775

Third, the *Conston* Court noted that *Benjamin Coal* "neither endorsed the judicial gloss of discharge that would 'extinguish' all vestiges of the original claim nor displaced the bedrock principle that discharge only enjoins enforcement while leaving the underlying debt in place." *Id.* In addition to the above is the fact that the Court in *Benjamin Coal* was faced with deciding the effect of post-confirmation conversion on an administrative claim, not the effect of a post-confirmation serial chapter 11 on a claim arising from unpaid trust fund taxes.

### Conclusion

While a discharge enjoins a creditor from attempting to collect the discharged debt as a personal liability of the debtor, it does not extinguish the debt. Accordingly, it does not alter the priority character of the underlying claim, even as embodied in the treatment of the claim in a chapter 11 plan. The objection by R.J. Reynolds–Patrick County Memorial Hospi-

tal, Inc., to the priority character of the claim filed by the Internal Revenue Service on behalf of the United States of America will be overruled.